STATE of Missouri,
Plaintiff-Respondent,

v.

Benjamin Earl CHASTAIN, III,
Defendant-Appellant.

No. 10909.

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 3, 1979.

Motion for Rehearing or to Transfer
Denied Aug. 27, 1979.

Douglas M. Hamilton, Joplin, for defendant-appellant.

John D. Ashcroft, Atty. Gen., Weldon W. Perry, Jr., Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

FLANIGAN, Chief Judge.

A jury found defendant Benjamin Earl Chastain guilty on two counts of selling marijuana and fixed the punishment at 10 years' imprisonment on each count. The trial court ordered the sentences to run concurrently. Defendant appeals.

Defendant's sole allegation of error is that the evidence is insufficient to support the conviction.

Count I of the information charged the defendant with selling marijuana to Stuart

Parker on April 15, 1977, for $15.00. Count II charged the defendant with selling marijuana to Parker on April 24, 1977, for $20.00. Both sales were alleged to have taken place in Jasper County.

The state's evidence showed that in March 1977 Jackie Moss talked with Gayle Wells, a sergeant with the Joplin Police Department, and informed Wells that he wanted to assist in narcotic investigations because his wife had used marijuana and was involved in "heavier use" of narcotics.

On April 15, 1977, Stuart Parker, an officer with the Carthage Police Department, was assigned to the Joplin Police Department "to work undercover narcotics." On that day Wells introduced Parker to Moss. About 9:50 p. m. Moss and Parker went to Darrell's Fussball Hall, 1612 South Main, Joplin. Parker was disguised as a hippie. Moss, who was previously acquainted with the defendant, introduced Parker to defendant. Defendant asked Parker what they were doing and Parker told defendant, "We are out trying to get high." Defendant asked Parker if he would like to buy some marijuana and Parker said he would.

At defendant's suggestion Parker drove defendant to the front of a house located at 718 Connor, Joplin. Moss was in the back seat. Defendant told Parker the price for the marijuana was $15.00. Parker gave defendant that sum. Defendant went into the house, returned with some marijuana and gave it to Parker.

Parker turned the marijuana over to Officer Wells. The marijuana remained in police custody until it was taken to a local college laboratory where scientific examination of it confirmed its character as marijuana.

With respect to the second offense, Parker testified that on April 24, 1977, he again met defendant at the fussball hall. Accompanied by Moss, Parker and defendant again went to the house at 718 Connor. Parker gave the defendant $20.00. The defendant went into the house, returned with marijuana and gave it to Parker. Parker turned the marijuana over to Wells. A subsequent laboratory examination confirmed that the subject of the sale was in fact marijuana.

Defendant's brief does not attempt to point out any failure of proof on the part of the state with respect to any element of the two offenses. Instead the brief singles out the following alleged weaknesses in the state's case:

1. In his police report Parker failed to mention that Moss was present at the time of the sales.

2. Officer Wells "put down that the marijuana (involved in the April 24 offense) was obtained at 20th and Main Street."

3. "Why would defendant sell marijuana to someone to whom he was introduced by the husband of his mistress?"

With regard to (1), Parker's police report was marked as defendant's Exhibit F. On cross-examination by defense counsel Parker identified the exhibit and stated that Moss' name did not appear in the report. Counsel did not ask the witness the reason for the omission nor was the report itself offered into evidence.

With regard to (2), the "evidence card" attached to the marijuana involved in the first sale made mention of "20th and Main" but the testimony of Officer Wells, elicited on cross-examination by defense counsel, was to the effect that 20th and Main "was the location that Officer Parker made contact with the defendant." Parker testified that after the first sale he had driven defendant back to the fussball hall and the two men parted company. Parker also testified that he had telephoned Wells from 20th and Main, approximately three blocks from the fussball hall, to report the first sale. This call was made shortly before Parker delivered the marijuana to Wells.

With regard to (3), there was testimony that Moss was separated from his wife and that she had been living with the defendant during April 1977. The cross-examination of Moss by defense counsel was apparently designed to show that Moss was angry with the defendant and thus it would be unlikely that the defendant would sell marijuana to

a stranger to whom he had been introduced by Moss.

■ As stated in *State v. Longmeyer*, 566 S.W.2d 496, 499[1–8] (Mo.App.1978), it is not the function of this court to substitute its judgment for that of the jury. It is the role of this court to determine whether or not there was substantial evidence to support the verdict. Substantial evidence means evidence from which the triers of the facts "reasonably could find the issue in harmony therewith." *State v. Taylor*, 445 S.W.2d 282, 284[4] (Mo.1969).

"A defendant is not entitled to a judgment of acquittal because of discrepancies or conflicts in the testimony of the state's witnesses. *State v. Cox*, 478 S.W.2d 339, 341 (Mo.1972). Conflicts in the evidence, the determination of the credibility of the witnesses and the weight to be given their testimony are within the peculiar province of the jury. *State v. Kellick*, 521 S.W.2d 166, 167 (Mo.App.1975). The fact that a witness' testimony may to some extent be contradictory does not prevent its constituting substantial evidence. Inconsistencies in testimony are questions for jury resolution. *State v. Hodges*, 537 S.W.2d 886, 887 (Mo. App.1976); *State v. Collett*, 526 S.W.2d 920, 925 (Mo.App.1975)." *Longmeyer*, supra, at 499.

■ Although the purported weaknesses stressed by the defendant may have been matters which the jury could consider in determining the credibility of the witnesses and the weight to be given their testimony, they do not rise to the rank of flaws which deprive the state's evidence of its substantiality. Defendant's appeal has no merit. The evidence was sufficient to support the verdict.

The judgment is affirmed.

TITUS and GREENE, JJ., concur.