**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Harold Dean RITTERBACH,
Defendant-Appellant.**

No. 12239.

Missouri Court of Appeals,
Southern District,
Division One.

Jan. 22, 1982.

John D. Ashcroft, Atty. Gen., Steven H. Akre, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Charles M. Wantuck, Springfield, for defendant-appellant.

TITUS, Judge.

In a two count felony information, defendant was charged (1) with selling lysergic acid diethylamide (LSD a/k/a "dragon acid"), a Schedule I controlled substance, to Tim Elliott on February 4, 1980, and (2) with selling methamphetamine ("crystal"), a Schedule II controlled substance, to Tim Elliott on April 8, 1980. A jury was waived. Following trial the court found defendant guilty as charged and sentenced him to ten years of imprisonment on each count to be served concurrently. This appeal ensued.

Tim Elliott (an undercover investigator for the Springfield Police Department), a special agent of the U.S. Treasury Department, and Steve "Doc" Lawrence (a paid police informant) went to defendant's Springfield home at 7 p. m. February 4, 1980. Other persons were present. Elliott and the agent each bought "dragon acid"

from defendant and observed him making sales of the substance to others on the premises. In the course of conversing with defendant, Elliott expressed a desire to purchase "crystal" and defendant said he would have some in the near future. The purchases made by Elliott and the special agent were analyzed by the Region II Crime Laboratory in the Springfield Police Department and found to be the Schedule I controlled substance described in Count I of the information.

At 11:30 p. m. April 8, 1980, Elliott and the informant returned to defendant's home and discussed buying "crystal." Defendant said the price would be $230 and when Elliott showed he was possessed of that amount in cash, defendant left the house ostensibly to obtain the substance desired. Upon returning ten minutes later, defendant gave the "crystal" to Elliott who paid defendant $230 therefor. Upon completion of the transaction, Elliott revealed his true identity and arrested defendant. A chemical analysis of the "crystal" showed it consisted of the Schedule II controlled substance described in Count II of the information.

■ In this appeal defendant includes among his points relied on a complaint that the trial court erred in overruling his motion for judgment of acquittal made at the close of the state's case. However, both defendant and the state have ignored that following denial of the motion, defendant put on testimony in his own case. When the latter occurred, defendant waived any objection to overruling the motion at the conclusion of the state's case. *State v. Davis,* 611 S.W.2d 384, 386[2] (Mo.App.1981); *State v. McCurry,* 582 S.W.2d 733, 734–735[2] (Mo.App.1979); *Achter v. State,* 545 S.W.2d 83, 84[2] (Mo.App.1976).

■ Defendant's points relied on, written most diffusely, are repetitive and penned in utter disregard of the mandates of Rule 30.06(d).[1] However, as defendant was not afforded an opportunity via notice to atone

for the infractions, we are compelled by Rule 30.09 to either excuse the infringements, or exercise our discretion to consider the points presented under the plain error doctrine. Rule 30.20. Nonetheless, enforced exoneration does not require a verbatim recasting of each point as written— only consideration of what we presume the issues to be.

The contention here that the trial court's finding defendant guilty was not established beyond a reasonable doubt, is amply answered by our summary of facts, supra. At trial, defendant did not contest the state's evidence in this regard in any fashion and on appeal presents no argument whatsoever under this point. On appeal defendant's contentions are (1) defendant's commission of the acts charged were not criminal because he engaged in the proscribed conduct because he was entrapped, (2) defendant, as charged in Count II, did not sell "crystal" to Elliott but only acted as Elliott's agent in procuring the substance and (3) the punishment assessed "was disproportionate to the facts shown in evidence."

■ Our statute, § 562.066–2, states: "An 'entrapment' is perpetuated if a law enforcement officer or a person acting in cooperation with such an officer, for the purpose of obtaining evidence of the commission of an offense, solicits, encourages or otherwise induces another person to engage in conduct when he was not ready and willing to engage in such conduct." Under this law, when the criminal intent originates in the mind of the officer and the defendant.is induced or lured into the commission of a crime he was not willing and ready to engage in, then, as a general rule, an entrapment occurs and no conviction may be had. On the other hand, if the criminal intent originates in defendant's mind, it is no defense to the charge that an opportunity is furnished or that an officer aids in the commission of the crime. *Wil-*

---

1. References to rules and statutes are to Missouri Rules of Court (13th ed. 1982) and to    Missouri Revised Statutes 1978.

*son v. State*, 606 S.W.2d 266, 267[4] (Mo. App.1980).

■ Defendant's sales of "dragon acid" to Elliott and the special agent on February 4, 1980, was part of a continuing sales operation defendant was then conducting at his home. He sold the substance (with no showing of inducement on the part of the officers) to other parties present at the house both before and after sales were made to Elliott and the agent. With these facts in evidence it was well within the province of the fact trier to find that defendant, freely and without inducement by the officers or the informant, sold the "dragon acid" and that he, without encouragement, was ready and willing to independently engage in such conduct. *State v. Collins*, 601 S.W.2d 640, 641[3] (Mo.App. 1980). "[T]he fact that government agents 'merely afford opportunities or facilities for the commission of the offense does not' constitute entrapment. Entrapment occurs only when the criminal conduct was 'the product of the *creative* activity' of law-enforcement officials.... To determine whether entrapment has been established, a line must be drawn between the trap for the unwary innocent and the trap for the unwary criminal." *Sherman v. United States*, 356 U.S. 369, 372, 78 S.Ct. 819, 821[4–6], 2 L.Ed.2d 848, 851[3] (1958); *Roth v. United States*, 270 F.2d 655, 659[2] (8th Cir. 1959), cert. denied 361 U.S. 931, 80 S.Ct. 368, 4 L.Ed.2d 352 (1960). Defendant's first contention is denied.

Defendant's second contention, which is point relied on No. 3 in his brief, and the argument appearing thereunder, in toto read as follows (the point consists of the first sentence and the argument the second): "The Court erred in its finding of guilty on Count II [sale of 'crystal'] ... for the reason that no sale was made, but instead the officers and informant requested the services of defendant, as their agent, to go out and procure drugs for them ..., and any doubt must be resolved in favor of defendant. As to any 'sale', the cases cited herein show facts in which defendant was acting for himself as the *owner* of drugs (where convictions were upheld) and are not similar to our case in which no ownership was shown, and additionally where defendant as requested went forth and obtained what the informants wanted."

■ We are not obligated to review points relied on or the argument made thereto, except in circumstances not present here, where they appear without citation of applicable authority and are not supported by proper argument. The argument itself made to the point, supra, admits the cases cited are not apropos. A point relied on should be sufficient in itself and the argument made thereto should be so clear that an appellate court is not required to seek through the transcript on appeal or other portions of the record to discover the meaning of either the point or the argument. *State v. Berger*, 618 S.W.2d 215, 217[4] (Mo. App.1981). Nevertheless, the implication of the point and argument seems to be that simply because defendant apparently did not have the "crystal" in his house when Elliott and the informant called to buy and ostensibly had to go elsewhere to procure it before an exchange was possible, defendant was not the seller thereof but was merely acting as Elliott's agent in making the procurement. The law indulges no presumption that an agency exists [*Dickey Company, Inc. v. Kanan*, 537 S.W.2d 430, 434[5] (Mo.App.1976) ] and the mere fact a seller of goods is momentarily without an item and must procure it before a sale may be made to a prospective customer, does not render the seller a mere agent of the intended customer and the latter the principal in the procurement. Defendant's second contention is denied.

■ Defendant's final and third contention that the punishment assessed "was disproportionate to the facts shown in evidence" is, we assume, a claim that the 10 year sentence imposed on each count to run concurrently was excessive. Under § 195.-200–1(4) the punishment provided for the offense of selling, giving or delivering a Schedule I or II controlled substance is imprisonment "for a term of not less than five years nor more than life imprisonment."

**898**

"[W]hen punishment imposed is within the range prescribed by statute, it cannot be judged excessive by the appellate court." *State v. Repp*, 603 S.W.2d 569, 571[4] (Mo. banc 1980). Defendant's third contention is denied.

Judgment affirmed.

GREENE, P. J., and FLANIGAN, J., concur.